UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE No.: _____

**PAOLA CALDERON,**

    **Plaintiff,**

vs.

**MCDONALD'S CORPORATION;
And MCDONALD'S RESTAURANTS
OF FLORIDA, INC.,**

    **Defendants.**
_____/

## COMPLAINT

**COMES NOW,** The Plaintiff, Paola Calderon (hereinafter "Plaintiff"), by and through the undersigned counsel, and pursuant to Rule 2, Federal Rules of Civil Procedure, hereby sues Defendants, McDonald's Corporation and McDonald's Restaurants of Florida, Inc. (hereinafter "Defendants" or "employers"), and states the following in support thereof;

## GENERAL ALLEGATIONS

1. This is an action by the Plaintiff for damages exceeding $30,000.00 excluding attorney fees or costs, pursuant to The Family and Medical Leave Act of 1993, 29 U.S.C. sec. 2601, *et seq.*, ("FMLA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. ch. 126 § 12101, *et seq.,*, ("ADA"), to redress injuries resulting from Defendant' unlawful, discriminatory treatment of Plaintiff.

1

2. Plaintiff was and continues to be, a resident of Miami-Dade County, Florida; and was an employee of Defendant, performing duties as a qualified personnel for the Defendant, within a company operated business facility, located in South, Florida.

3. Defendant, is a for-profit corporation, duly authorized to conduct business in the State of Florida.

4. Venue is proper in Miami-Dade County, Florida, pursuant to Fla. Stat. Section 47.011, and 47.051, because all of the actions complained of herein occurred within the jurisdiction of This Honorable Court.

5. Plaintiff has exhausted its administrative remedies by filing a timely charge with the appropriate agency.

6. Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC), the agency which is responsible for investigating claims of employment discrimination.

7. The investigating agency outlined to the Defendant employer the reasonable cause for its belief that the Defendant employer is in violation of the act.

8. The investigating agency offered the Defendant employer an opportunity for voluntary compliance.

9. The investigating agency attempted conciliation with the Defendant employer.

10. Pursuant to Florida Statute Section 760.11 (1), for all charges of discrimination filed after June 8, 2001, the filing of a discrimination charge with the Equal Employment Opportunity Commission or with a local fair employment practices agency, vest the Florida Commission On Human Relations with jurisdiction with respect to that charge.

11. All conditions precedent for the filing of this action before this Court have indeed been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS

12. Plaintiff was discriminated and retaliated against by Defendant employer based on her son's disability.

13. Plaintiff worked for McDonald's of Miami from on or about December 21, 2013 until November 2020, as a Drive Thru cashier. Sonia Molina started working for the company, as the new store manager, about five months ago. Since Ms. Molina became the store manager, Plaintiff has been denied requests for accommodations. When the Covid19 pandemic started, the company gave its employees time off, as a leave of absence, because our children did not have school. Plaintiff's son, who is 9 years old, has been deemed legally disabled by the government since he was 3 years old. Plaintiff's son is autistic, has encephalopathy, motor apraxia, squint, global developmental delay, and complex partial epilepsy. The former store managers that supervised plaintiff, understood her situation, and were flexible in providing accommodations. Prior to the new manager/discriminator, whenever a situation would arise in which she had to change schedule so that she could care for her son, former managers would grant Plaintiff's requests. Plaintiff never had any issues with management until Ms. Molina arrived. Ms. Molina would consistently deny Plaintiff work schedule requests, despite being aware of Plaintiff's son's disability and Plaintiff's need for a flexible schedule so she can be available for her son when the situation required it.

14. Plaintiff is the only home-caregiver for her child.

15. Prior to returning to work, Ms. Molina called Plaintiff to inquire about her return date and asked to come in at least once a week so that Plaintiff did not lose her job. Plaintiff advised that because of the pandemic's social distancing guidelines, the closing of all schools and day cares, and the fact that she had no one to help her in caring for her disabled son, it would be extremely difficult for her to return to work at the moment.

16. On or about August 3, 2020, Plaintiff's leave of absence was over and she had to go back to work, Plaintiff contacted Yusnavy (last name unknown), who was in charge of doing the schedules at that time, to ask her to help in returning to work with an accommodating schedule.

17. Ms. Molina would not communicate with Plaintiff to facilitate accommodation of schedule to permit care for Plaintiff's disabled minor child.

18. Yusnavy informed Plaintiff that Defendant would no longer accommodate a schedule and hold Plaintiff's job.

19. Plaintiff could not work three days per week because of the need to take care of her disabled child and requested a reasonable accommodation.

20. Plaintff had to contact human resources as the work shift and hours she had requested were denied by Ms. Molina, who was well aware that she had a child with special needs.

21. Plaintiff was discriminated against because of her son's disability.

22. Thereafter, Human Resources contacted general manager, Oscar Corado, and Plaintiff was able to talk to him and explained her situation: that her schedule was temporary so she wouldn't lose her job until schools opened back from the pandemic.

23. Plaintiff also notified the general manager of the problems she was experiencing with Ms. Molina.

24. On or about August 18, 2020, Plaintiff was able to start work one day a week from 4am-9am. On or about October 5, 2020, Plaintiff was able to contact Ms. Molina and inform her that she could commence working Monday through Friday from 9am to 2pm as schools had re-opened again. Without me being on the schedule, Ms. Molina authorized me to start working every day from 9am to 2pm.

25. On or about October 13, 2020, Plaintiff was called from my son's school because a teacher tested positive with Covid-19 so the entire class had to close and quarantine for 14 days and the class would continue online. Plaintiff notified Defendant and explained the emergency situation and Plaintiff requested an accommodation wherein she asked to be permitted to work those 14 days on the night shift from Monday to Friday from 10pm to 4am, that way the child's father could take care of Plaintiff's son and Plaintiff could help her son in his online classes during the day and not lose her work hours.

26. On or about November 2, 2020, Plaintiff had been assigned to work in the morning shift in the schedule, but by the 3rd and 4th of November, Plaintiff was in the night shift again, but could no longer work that schedule. During this time, the person in charge of making the schedules was Martha who was also new. Martha asked Plaintiff to please work for her those two (2) night shifts for the last time because she did not have other employees available, and asked Plaintiff to talk to Ms. Molina about her schedule on or about Thursday, November 6, 2020, when she returned from vacation. On or about November 6, 2020, Plaintiff spoke to Ms. Molina and explained that her son's class had already reopened, that Plaintiff needed to return to her morning schedule. Defendant refused - that the schedule was finalized until on or about November 17, 2020, and that they couldn't let Plaintiff work in the morning when she had previously authorized it.

27. On or about November 7, 2020 Plaintiff communicated with human resources about this situation and they gave her the number of Edna Vergara who is the human resources representative for the store where Plaintiff worked.

28. On or about November 9, 2020, Plaintiff spoke to Anisa Taboas who was in charge of Ms. Vergara's position. Plaintiff notified Ms. Taboas about her son's special needs, that Ms. Molina was not accommodating my schedule requests and that Plaintiff felt she was being discriminating against me because of son's disability.

29. Plaintiff has been out of work because Ms. Molina refused to schedule Plaintiff to work the morning shift. Plaintiff was scheduled to work the morning shifts starting on or about November 19th, 2020, but now her hours in retaliation have been significantly reduced.

30. Plaintiff's work hours since requesting accommodation and complaining to human resources of the discrimination and retaliation, the work hours went from working 28 hours per week to now only being scheduled to work 2 days for a total of 9 hours per week, because she attempted to take FMLA leave to care for her son.

31. Throughout Plaintiff's employment, she never received any complaints about her work performance and was able to perform her duties at or above satisfactory levels.

32. Any reason proffered by Defendant employer, if any, for the adverse employment action is mere pretext for unlawful discrimination due to Plaintiff' son's disability.

33. Throughout Plaintiff's employment, Plaintiff's work had been exemplary and proven herself an exceptional and professional employee. Plaintiff performed his job well.

34. During the relevant time period, Plaintiff was subjected to different terms and conditions of employment because of her relationship to a disabled close family member, her minor child who required care.

35. Plaintiff while employed with Defendant was a victim of blatant, willful and unlawful discrimination based upon her relationship to a disabled close family member, her minor child who required care. Furthermore, Plaintiff was retaliated due to the exercise of her legal rights.

36. Even though Plaintiff followed employer's proscribed methods for reporting discrimination, Defendant failed to conduct a contemporaneous investigation into the serious issues raised by Plaintiff or make Defendant's human resources department aware of Plaintiff's concerns such that corrective and/or remedial action could be taken. As a result, Defendant never followed up with Plaintiff about the steps that were being taken to address Plaintiff's concerns, as there were none.

37. Inter alia what led to Plaintiff's decrease of employment hours was Plaintiff's refusal to remain silent in the face of a toxic culture that included discriminatory comments, discriminatory acts against protected class.

38. Plaintiff was subjected to repeated discriminatory actions for complaining about the violation of his protected class rights.

39. Plaintiff believed defendant was committed to ensuring a respectful workplace for all employees, reported the illegal employer transgressions to various leadership members of Defendant executives with the expectation that human resources for Defendant would investigate Plaintiff's complaints and take appropriate remedial action. Instead of taking appropriate actions and investigating these serious issues Defendant's proclaimed stance on discrimination does not reflect the actual culture of the employer. Time after time Defendant has chosen corporate profits over doing the right thing and taking meaningful action to eradicate discrimination on its own.

40. Plaintiff believed defendant was committed to ensuring a respectful workplace for all employees, reported the illegal employer transgressions to various leadership members of Defendant executives with the expectation that human resources for Defendant would investigate Plaintiff's complaints and take appropriate remedial action. Instead of taking appropriate actions and investigating these serious issues Defendant's proclaimed stance on discrimination does not reflect the actual culture of the employer.  Time after time Defendant has chosen corporate profits over doing the right thing and taking meaningful action to eradicate discrimination on its own.

41. Plaintiff is informed and believes and thereon alleges that pursuant to the Americans With Disabilities Act, it is unlawful to harass employees based on their statutory protected class, and that employers must take all reasonable steps to prevent harassment from occurring. Plaintiff is further informed and believes and thereon alleges that the ADA holds employers strictly liable for harassment by Plaintiff's direct supervisor or any other manager.

42. Plaintiff is informed and believes and thereon alleges that, based on the allegations as set forth herein, and throughout this complaint, employer knew of the harassing and discriminatory conduct directed at Plaintiff and are responsible for, and liable for, the harassment and hostile work environment created by the harassment and discrimination done to Plaintiff, based on Plaintiff's protected class as stated within Plaintiff's charge of discrimination filed pre-suit with the Equal Employment Opportunity Commission.

43. As a direct and proximate result of Defendant's unlawful harassment of Plaintiff, and the creation of a hostile work environment, as alleged herein, Plaintiff has suffered loss of income, and has experienced stress and severe emotional distress, thus entitling Plaintiff to damages in

an amount to be proven at the time of trial in this matter. Plaintiff is further informed and believes and thereon alleges that the conduct of Defendant was severe and pervasive.

44. As a direct and proximate result of Defendant, and each of their, discriminatory actions as alleged herein, Plaintiff has suffered, and continues to suffer damages, the exact amount of which will be proven at trial.

45. As a proximate result of Defendant's actions, Plaintiff has suffered, and continues to suffer severe and lasting humiliation, embarrassment, mental anguish, and other incidental and consequential damages and expenses, which all caused Plaintiff damage in an amount according to proof at trial.

### COUNT I
### *ASSOCIATIONAL DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AND THE ADA AMENDMENTS ACT OF 2008*

46. Plaintiff re-adopt each and every factual allegation as stated in paragraphs 1-45 of this complaint as if set out in full herein.

47. Plaintiff is a member of a protected class under the ADA, and the ADAAA.

48. Defendant violated 42 U.S.C. ch. 126 § 12101 *et seq.*, as amended, in that Plaintiff would not have had her employment suffer from diminished hours but for the fact that she has a disabled child in the class of person's protected under the pertinent statutes.

49. By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Defendant's knowledge of the disability that arose out of Plaintiff's children suffering from various disabilities, yet they still subjected Plaintiff to associational disability-based discrimination and animosity.

50. Such discrimination was based on the Defendant's knowledge of Plaintiff's child had various disabilities that limited Plaintiff working as a result of the required leave as her child was

prevented from engaging in several major life activities including, but not limited to, walking, sitting, and working.

51. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's associational disability was unlawful but acted in reckless disregard of the law.

52. At all time material hereto, the employees exhibiting discriminatory conduct towards plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

53. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

54. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

55. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and federal law.

56. The actions of the Defendant and/or its agents were willful, wanton, intentional, and with malic or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to state and federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

57. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

WHEREFORE, Plaintiff respectfully requests that this court order the following:

A. Adjudge and decree that Defendant has violated the ADA, and has done so willfully, intentionally, and with reckless disregard to the Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amount to be proved at trial for the unlawful employment practices described herein.

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had had Plaintiff not ben discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E. Award Plaintiff the costs of this action, together with a reasonable attorney's fee; and

F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
### *RETALIATION IN VIOLATION OF THE ADA*

58. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 of this Complaint as if set out in full herein.

59. Defendant is an employer as that term is used under the applicable statutes referenced above.

60. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under the ADA.

61. The foregoing unlawful actions by Defendant were purposeful.

62. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and she was the victim of retaliation, thereafter, as related in part above.

Specifically, Plaintiff asked Defendant, and/or agents thereof, to allow Plaintiff to continue working in spite of needing leave for days of work, that had been previously excused as a result of her child's disability, and explained she was being provided with less hours as time went on as a result of this disability and missed days of work, but was provided less employment hours nonetheless.

63. Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

64. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.

65. These damages are continuing and are permanent.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendant; find that the Defendant indeed violated the FRCA, and in addition, order the following additional relief:

A. Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

C. Require Defendant to place Plaintiff to the position of full time Medical Assistant at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement;

  D. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT III
### *INTERFERENCE WITH RIGHTS UNDER THE FMLA*

66. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 above as if set out in full herein.

67. Plaintiff is an individual entitled to protection under the FMLA.

68. Plaintiff is an employee within the meaning of the FMLA.

69. Plaintiff engaged in protected activity within the meaning of the FMLA.

70. Defendant's actions interfered with Plaintiff's lawful exercise of FMLA rights.

71. Defendant's actions constitute violations of the FMLA.

72. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

  A. Adjudge and decree that Defendant has violated the FMLA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

  B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, front pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

  C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

  D. Require Defendant to reinstate Plaintiff to his position at the rate of pay and with the full benefits he would have, had he not been discriminated against by

    Defendant, or in lieu of reinstatement, award his front pay;

 E. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

 F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

73. Plaintiff requests a Jury Trial for all issues triable by jury.

Dated this 4th day of March, 2022      Respectfully submitted,

                 */s/ Jorge L. Costa*
                 **Anthony M. Georges-Pierre, Esq.**
                 Florida Bar No.: 533637
                 agp@rgpattorneys.com
                 **Max L. Horowitz, Esq.**
                 Florida Bar No.: 118269
                 mhorowitz@rgpattorneys.com
                 **Jorge L. Costa, Esq.**
                 Florida Bar No.: 1031513
                 jcosta@rgpattorneys.com
                 **REMER & GEORGES-PIERRE, PLLC**
                 COURTHOUSE TOWER
                 44 West Flagler Street, Suite 2200
                 Miami, FL 33130
                 Telephone: (305) 416-5000
                 Facsimile: (305) 416-5005
                 *Counsel for Plaintiff*